IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PETER KOSTYSHYN, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 16-235-LPS |
| | : | |
| DANA METZGER, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

## MEMORANDUM OPINION

Peter Kostyshyn. *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

March 19, 2018
Wilmington, Delaware

---

[1]Warden Dana Metzger replaced former Warden David Pierce, an original party to the case. *See* Fed. R. Civ. P. 25(d).

*[signature]*
STARK, U.S. District Judge:

I. INTRODUCTION

Presently pending before the Court is Petitioner Peter Kostyshyn's ("Petitioner") Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 1) The State filed an Answer in opposition. (D.I. 14) For the reasons discussed, the Court will dismiss the Petition.

II. BACKGROUND

On August 22, 2009, a person living next to Petitioner's house took out his garbage. Petitioner was working on the ground with a pickax, and threatened to stick the pickax into the individual. *See Kostyshyn v. State*, 51 A.3d 416, 418 (Del. 2012). Petitioner was indicted on charges of aggravated menacing, possession of a deadly weapon during the commission of a felony, and terroristic threatening. In October 2009, the Delaware Superior Court appointed an attorney ("Attorney 1") to represent Petitioner. *Id.* Attorney 1 filed a motion to withdraw as counsel on December 9, 2009, which the Superior Court granted on December 10, 2009. *Id.* On January 27, 2010, the Superior Court appointed a new attorney ("Attorney 2") to represent Petitioner. Attorney 2 filed a motion to withdraw as counsel on January 27, 2010, which the Superior Court granted after a hearing on February 23, 2010. *Id.* From this point forward, Petitioner represented himself.

On October 13, 2010, Petitioner filed a "multifaceted" motion in the Superior Court asking, among other things, for a mental health examination to determine his ability to represent himself. (D.I. 17-9 at 6, Entry Nos. 44 & 46) On October 22, 2010, the Superior Court denied the motion, finding that Petitioner offered no basis for a mental health evaluation. (D.I. 17-9 at 6, Entry No. 46) In November 2010, a Delaware Superior Court jury convicted Petitioner of aggravated menacing, possession of a deadly weapon during the commission of a felony, and terroristic threatening. *See In*

*re Kostyshyn*, 72 A.3d 501 (Table), 2013 WL 3788235, at *1 (Del. July 16, 2013). The Superior Court sentenced Petitioner to a total period of 12 years at Level V incarceration, to be suspended after serving seven years in prison for decreasing levels of supervision. *Id.* The Delaware Supreme Court affirmed Petitioner's convictions and sentence on direct appeal. *See Kostyshyn*, 51 A.3d at 423.

In June 2013, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). *See State v. Kostyshyn*, 2016 WL 3226322, at *1 (Del. Super. Ct. May 31, 2016). The Superior Court appointed conflict counsel ("post-conviction counsel") to represent Petitioner during the Rule 61 proceeding. (D.I. 14 at 2) Post-conviction counsel requested, and was granted, an extension of time to file a new Rule 61 motion on Petitioner's behalf. *Id.* The Superior Court denied the Rule 61 motion on January 26, 2015, and the Supreme Court affirmed that decision on September 14, 2015. *See Kostyshyn*, 2016 WL 3226322, at *1.

### III. GOVERNING LEGAL PRINCIPLES

#### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

2

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

3

*Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new, reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C.

4

§ 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Petitioner timely filed the § 2254 Petition presently pending before the Court, which asserts the following four grounds for relief:[2] (1) Attorneys 1 and 2 provided ineffective assistance during the pre-trial stages of Petitioner's criminal proceeding because they did not request a competency evaluation; (2) the State was aware of Petitioner's mental health issues and failed to disclose documentation of those issues to him; (3) the failure to disclose unidentified records to Petitioner

---

[2]The Petition actually asserts five grounds for relief (D.I. 1), but the Court dismissed Claim Three as second or successive during the initial screening process (D.I. 5; D.I. 6). Therefore, only four Claims remain pending in this case, and the Court will refer to original Claims Four and Five as Claims Three and Four, respectively.

5

constituted prosecutorial and judicial misconduct; and (4) post-conviction counsel provided ineffective assistance during Petitioner's Rule 61 proceeding because he called Petitioner "bat-shit crazy" and refused to communicate with him.

### A. Claim One: Ineffective Assistance of Attorneys 1 and 2

In Claim One, Petitioner contends that Attorney 1 and Attorney 2 were ineffective during the pre-trial stages because they did not raise the issue of Petitioner's mental health and/or seek a competency evaluation. The Superior Court denied this argument as meritless during Petitioner's Rule 61 proceeding, and the Delaware Supreme Court summarily affirmed that decision. (D.I. 17-8 at 52-69; *see also Kostyshyn v. State*, 124 A.3d 583 (Table), 2015 WL 5440194 (Del. Sept. 14, 2015)) Consequently, Petitioner may only obtain habeas relief if the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 698.

6

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).

Since the Delaware Superior Court correctly identified the *Strickland* standard applicable to Claim One in this case, the Superior Court's decision was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[3] *See Richter*, 562 U.S. at 105. The

---

[3]As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the

7

relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

A person is competent to stand trial if his mental condition is such that he has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). When determining if an examination into a defendant's competency is required, a court must consider

> evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but [] even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180.

When Petitioner appealed his 2010 conviction, he argued, *inter alia*, that the trial court erred by failing to grant his request for a competency hearing prior to the start of his 2010 criminal trial.

---

range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

After specifically addressing and rejecting the three "reasons" Petitioner provided to demonstrate his alleged incompetence stand trial in 2010, the Delaware Supreme Court opined that

> [Petitioner] may be cantankerous, but the record does not suggest that he lacks the ability to understand the proceedings he faced. None of the arguments put forward on appeal suggests that the Superior Court judge committed clear error by failing to order a competency hearing without any prompting from [Petitioner's] attorney. We also find it telling that the State's Answering Brief stated that none of the attorneys who represented [Petitioner] ever contended he was incompetent, nor has any judge ever ordered a competency hearing.

*Kostyshyn*, 51 A.3d at 422.

In his Rule 61 proceeding, Petitioner raised a substantially similar argument, asserting that he had been incompetent to represent himself, and that Attorneys 1 and 2 were ineffective because they failed to raise the issue of his competency during their short-lived representation of him. Petitioner corroborated the argument with a neuropsychological evaluation report by Dr. Pedro A. Saez, Ph.D. (D.I. 17-10 at 22-55) Although Dr. Saez admitted that "[a]ddressing this inmate's competency to stand trial retrospectively is a challenging issue," Dr. Saez's primary reason for concluding that Petitioner was not competent to stand trial in 2010 was his (Dr. Saez's) diagnosis that Petitioner suffered from a "chronic paranoid personality disorder." (D.I. 17-10 at 53) The Superior Court Commissioner rejected Petitioner's argument that Attorneys 1 and 2 were ineffective for not raising the issue of his competency, explaining:

> The [Delaware] Supreme Court decision in this case reviewed the full trial transcript and determined that [Petitioner] was cantankerous and willfully obstinate, but not incompetent. Indeed, it is not the [Petitioner's] difficult personality which the Supreme Court considers to determine whether [Petitioner] was incompetent at the trial, but whether [Petitioner] could participate rationally in the proceedings. One need look at the proceedings and how [Petitioner] was able to understand them. Throughout the record, there is evidence of [Petitioner's] ability to cross-examine a hostile witness; understanding of court protocol in the presence of the jury; knowledge of witness

9

> credibility and impeachment; comprehension of pre-trial scheduling issues, discovery and evidence; ability to memorize and articulate statutes; ability to show courtesy and deference to the Court; more than competent knowledge of the appellate process; capacity to understand the State's burden of proof and the implications of no objection by the State; and many other instances where there is no indication that [Petitioner] lacked capacity to understand his charges or the legal process through which he must go.
>
> \* \* \*
>
> [P]etitioner now claims that the two attorneys he abused should have, during their brief tenure with him, considered his actions worthy of a competency evaluation. The Superior Court has already determined that the trial judge, even after a prolonged exposure to [Petitioner], was correct in not considering competency *sua sponte* because he did not observe conduct to merit a competency review; to subject the attorneys (who spent far less time with [Petitioner] than the trial judge) to this irrational standard is ludicrous. [Petitioner] has shown no indication that he is incompetent. In fact, his actions show a definitive familiarity with courtroom procedures and protocol, with evidence and testimony, with cross-examination and direct. [Petitioner] is neither stupid, nor indigent. In truth, he is difficult and he does not work well with attorneys, to the point that he was appropriately denied yet another attorney to represent him, a decision that was upheld by the Delaware Supreme Court.

(D.I. 17-8 at 59-61) The Superior Court Commissioner then concluded, "[a]pplying the *Strickland* two-part test to determine whether prior Counsel was ineffective, this Court cannot proceed beyond the first prong." (D.I. 17-8 at 62) More specifically, the Commissioner explained: (1) Dr. Saez examined Petitioner on January 28, 2014, which was more than three years after Petitioner's November 2010 criminal proceeding; (2) Dr. Saez's report was inconsistent with observable behavior at the time of the trial; (3) the Commissioner was underwhelmed with Dr. Saez's evaluation; and (4) Petitioner's reliance on a competency exam performed well-after Petitioner's trial was "misguided" and failed to rebut the strong presumption that the representation provided by Attorneys 1 and 2 fell within the wide range of reasonable professional assistance. (D.I. 17-8 at 53-

66) The Superior Court adopted the Commissioner's Report and Recommendation and denied Claim One, and the Delaware Supreme Court affirmed the Superior Court's judgment on the basis of the reasons set forth in the Commissioner's Report and Recommendation.

As a general rule, retrospective competency determinations are disfavored, but may be permissible if the passage of time is not great and the mental health expert can consult contemporaneous medical reports. *See Riel v. Ayers*, 2010 WL 1980251, at *7 (E.D. Cal. May 17, 2010). Presumably, contemporaneous *medical* reports which are not *mental health* reports would be relevant for retrospective competency determinations only if they indicate psychological or cognitive deficiencies and whether the defendant is capable or incapable of understanding the nature or consequences of his legal proceedings. *See United States v. Dahl*, 807 F.3d 900, 904 (8th Cir. 2015).

The Court concludes that the Delaware Supreme Court's factual finding on both direct and post-conviction appeal that a competency hearing was not required at the time of trial constituted a reasonable determination of the facts. *See* § 2254(d)(2); § 2254(e)(1). This factual determination is entitled to a presumption of correctness, because nothing in the record or Petitioner's submissions in this proceeding clearly and convincingly rebut the Delaware Supreme Court's determination that Petitioner could understand the proceedings against him at the time of his trial in 2010. *See* § 2254(d)(2); § 2254(e)(1); *see also Drope*, 420 U.S. at 171. For instance, during Petitioner's Rule 61 proceeding, the Superior Court properly relied on its own contemporaneous observation that Petitioner had behaved competently during his criminal trial as providing one of its reasons for rejecting Dr. Saez's retrospective determination that Petitioner had been incompetent to stand trial in November 2010. (D.I. 17-8 at 63) Notably, Dr. Saez himself admitted how challenging it is to retrospectively determine incompetency to stand trial. (D.I. 17-8 at 65)

11

In turn, to the extent Dr. Saez's June 28, 2014 revised psychological report (D.I. 18-33 at 22-55) referred to *medical* records that were created somewhat contemporaneously with Petitioner's November 2010 criminal trial, these records did not identify any medical conditions that may have affected Petitioner's cognition (D.I. 18-33 at 32-44). For example, in 2009, Petitioner was placed under psychiatric observation on three separate occasions, but he did not exhibit "overt signs of psychosis" or suicidal ideation during those occasions. (D.I. 18-33 at 33-34) Twenty-nine of the 105 medical entries that were reviewed by Dr. Saez when drafting his Rule 61 report sporadically referred to Petitioner's paranoia, depression, and anxiety, but did not render an observation about his competency to stand trial or indicate a medical condition that might have affected Petitioner's cognitive ability. (D.I. 18-33 at 34-44)

Moreover, the two Psychiatric Evaluation Reports which Dr. Saez used as the basis for his retrospective determination regarding Petitioner's competency to stand trial were not conducted contemporaneously with his 2010 trial. (D.I. 18-33 at 32, 46) Rather, one Report was from June 2002, approximately eight years before Petitioner's trial, and the other Report was from September 2012, two years after Petitioner's trial. (D.I. 18-33 at 52-53) Significantly, Dr. Saez's conclusion that Petitioner has a paranoid personality disorder (D.I. 18-33 at 52) does not mean that he was inherently incompetent to stand trial. *See Heidnik v. White*, 112 F.3d 105, 109 (3d Cir. 1997).

Finally, during its Rule 61 review of Claim One, the Superior Court also properly relied on the Delaware Supreme Court's determination on direct appeal that the trial court did not commit clear error by failing to order a competency hearing *sua sponte*. (D.I. 17-8 at 59-60) Notably, the Delaware Supreme Court referred to the competency-to-stand-trial standard articulated in *Drope* and determined Petitioner understood the charges against him and that he had prepared a defense. *See Kostyshyn*, 51 A.3d at 421, ns. 14, 16 & 17. After thoroughly examining the trial court record, the

12

Delaware Supreme Court aptly concluded that Petitioner's cantankerous attitude and "calculated obstinance" did not demonstrate his inability to understand the proceedings. *Id.* at 421-22. For all of these reasons, the Court accepts as correct the Delaware Supreme Court's determination that Petitioner was competent to stand trial in November 2010. *See Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007).

An attorney does not provide ineffective assistance by failing to raise meritless objections to the trial court. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Based on the foregoing, the Court further concludes that the Delaware Supreme Court reasonably applied *Strickland* in affirming the Superior Court's decision that Attorneys 1 and 2 did not provide ineffective assistance by failing to file a meritless motion for a competency hearing. Accordingly, the Court will deny Claim One because it does not warrant relief under § 2254(d).

### B. Claims Two and Three: Procedurally Barred

In Claim Two, Petitioner contends that the State was aware of Petitioner's mental health issues and failed to disclose documentation of those issues to him. In Claim Three, Petitioner asserts that the failure to disclose unidentified records to Petitioner constituted prosecutorial and judicial misconduct. Petitioner did not present these arguments to the Delaware Supreme Court on direct or post-conviction appeal. At this juncture, any attempt by Petitioner to raise Claims Two and Three in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1). *See Folks v. Phelps*, 2009 WL 498008, at *12 (D. De. Feb. 26, 2009). Consequently, these two Claims are procedurally barred, and the Court cannot review their merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claims are not reviewed.

In *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012), the Supreme Court held that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*, that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *See id.* at 9-10, 16-17.

Petitioner contends that post-conviction counsel was ineffective for calling him "bat shit crazy" and for not communicating with him (D.I. 1 at 5), perhaps in an attempt to excuse his default of Claims Two and Three under the narrow *Martinez* exception to the procedural default doctrine. This attempt is unavailing, however, because Claims Two and Three do not assert that trial counsel provided ineffective assistance.[4]

In the absence of cause, the Court does not need to address prejudice. Nevertheless, since, as discussed above, the Delaware courts considered and rejected Petitioner's claim regarding his alleged incompetency, Petitioner cannot demonstrate that he will be prejudiced if the Claims are not reviewed.

Finally, the miscarriage of justice exception does not excuse Petitioner's procedural default, because he has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims Two and Three as procedurally barred.

---

[4]Indeed, any ineffective assistance of trial counsel claim would be facially baseless because Petitioner represented himself at trial. Additionally, Attorney 1 only represented Petitioner from October 26, 2009 to January 27, 2010, and Attorney 2 represented Petitioner from just January 27, 2010 to February 23, 2010. (D.I. 17-9 at 1-4)

14

### C. Claim Four: Ineffective Assistance of Post-Conviction Counsel

In Claim Four, Petitioner contends that post-conviction counsel provided ineffective assistance by referring to him as "bat-shit crazy" and for not communicating with him. A claim alleging the ineffective assistance of post-conviction counsel is not cognizable on federal habeas review. *See* 28 U.S.C. §2254(i) ("The effectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings."). Therefore, the Court will deny Claim Four for failing to assert a proper basis for federal habeas relief.

### IV. PENDING MOTIONS

Petitioner filed the following Motions during the pendency of this proceeding:

1. Motion for Immediate Release and Appointment of Counsel (D.I. 12)
2. Motion for Recusal of DAG Vella (D.I. 13)
3. Motion for Recusal of Judge Andrews (D.I. 21)
4. Motion to Appoint Counsel (D.I. 22)
5. Motion for Docket, Case History, Evidentiary Hearing (D.I. 23)
6. Motion for Adequate Representation (D.I. 24)
7. Second Motion for Recusal of Judge Andrews (D.I. 25)
8. Motion for Re-notice of Rule 6(a),(b) Discovery (D.I. 26)
9. Motion for Re-notice to Delaware Defender's Office to Submit Documents (D.I. 27)
10. Motion to Compel James T. Vaughn Employees to Disclose Records (D.I. 36)

11. Motion for Evidentiary Hearing, Appointment of Counsel, Court Records (D.I. 43)
12. Re-Notice of Motions to Recuse and Depose Andrew Vella (D.I. 52)
13. Motion to Release Sealed Delaware Superior Court Documents (D.I. 53)
14. Motion for Relief, Appointment of Counsel (D.I. 54)

The Court will deny as moot the two Motions for Judge Andrews' Recusal (D.I. 21; D.I. 25), because the case was re-assigned to the Undersigned Judge's docket on August 30, 2017. In addition, having concluded that it must deny the instant Petition in its entirety, the Court will deny the remaining Motions as moot. (D.I. 12; D.I. 13; D.I. 22; D.I. 23; D.I. 24; D.I 26; D.I. 27; D.I. 36; D.I. 43; D.I. 52; D.I. 53; D.I. 54)

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.